# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **EDWARD WEBB**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12 C 2152 |
| | ) |
| **GARDNER, CARTON & DOUGLAS LLP LONG TERM DISABILITY PLAN**, **UNUM LIFE INSURANCE COMPANY OF AMERICA**, and **DRINKER BIDDLE & REATH LLP**, f/k/a **GARDNER, CARTON & DOUGLAS LLP**, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Edward Webb ("Webb"), formerly an equity partner in law firm Gardner, Carton & Douglas LLP ("Gardner Carton") (now merged into Drinker Biddle & Reath LLP ("Drinker")), has brought an action under the Employee Retirement Income Security Act ("ERISA," 29 U.S.C. §§1001-1461)[1] against Gardner, Carton & Douglas LLP Long Term Disability Plan (the "Plan"), Unum Life Insurance Company of America ("Unum") and Drinker. Drinker and the Plan have filed a joint motion to dismiss under Fed. R. Civ. P. ("Rule") 12(b)(6), and Unum has filed its own Rule 12(b)(6) motion. For the reasons explained in this opinion, all three of Webb's claims are dismissed as untimely.

---

[1] Those and other provisions of Title 29 will be cited simply as "Section --," omitting the prefatory "29 U.S.C."

**Rule 12(b)(6) Standards**

Under Rule 12(b)(6) a party may move for dismissal of a complaint for "failure to state a claim upon which relief can be granted." By now it is stale news that over five years ago Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63 (2007) repudiated as overly broad the then half-century-old formulation in Conley v. Gibson, 355 U.S. 41, 45–46 (1957) "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Instead Twombly, id. at 555 teaches that a complaint must provide "only enough facts to state a claim to relief that is plausible on its face." Or put otherwise, "[f]actual allegations must be enough to raise a right of relief above the speculative level" (id. 555). Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam) and Ashcroft v. Iqbal, 556 U.S. 662 (2009) have since provided further Supreme Court enlightenment on the issue.

Familiar Rule 12(b)(6) principles -- still operative under the new pleading regime -- require this Court to accept as true all of Webb's well-pleaded factual allegations, with all reasonable inferences drawn in his favor (Christensen v. County of Boone, 483 F.3d 454, 457 (7th Cir. 2007) (per curiam)). What follows in this opinion adheres to those principles.[2]

**Background**

Until May 16, 2002 Webb was an equity partner at Gardner Carton (Cmplt. ¶14) and was also a member of the ERISA-regulated Plan -- a group policy issued by Unum and administered

---

[2] This opinion cites to Webb's Complaint and its exhibits as "Cmplt. ¶ --" and "Ex. --" respectively, to Unum's supporting memorandum as "U. Mem. --," to Drinker's and the Plan's joint memorandum as "D. Mem. --" and to Webb's memorandum in response to U. Mem. as "W. Resp. U. --."

by Gardner Carton (id. ¶¶10, 34). In the event of a plan participant's long term disability, the Plan provided monthly cash benefits based on the participant's salary and -- before 2002, anyway -- capped at $15,000 (Ex. G).

In January 2002 Gardner Carton equity partners gained access to an individual disability income policy (the "IDI Plan") that provided a monthly payment of $6,500 to the disabled (id.; Cmplt. ¶10). Defendants do not dispute that the IDI Plan payments were a supplement to the Plan (see U. Mem. 2; D. Mem. 2), but the parties disagree about the maximum allowable benefits. After the 2002 alteration to the insurance scheme, the Plan language still indicated that its payments were capped at $15,000 (Ex. A), suggesting a total monthly disability cap of $21,500 for equity partners.

To the contrary, defendants have continually asserted that the post-January 2002 Plan was actually supposed to have a monthly cap of $8,500 and that the $15,000 Plan maximum was a drafting error (Cmplt. ¶20). That is evidenced, defendants suggest, by two letters allegedly sent to the plan participants -- one in December 2001 and one in April 2002 -- explaining the changes to the insurance scheme and placing the Plan's monthly maximum at $8,500 (Exs. F and G). But Webb contends that he never saw those letters until January 2003 (W. Resp. U. 2).

On May 15, 2002 Webb experienced a heart attack -- his second -- and permanently ceased his work at Gardner Carton (Cmplt.¶14). He began receiving both the Plan and IDI Plan benefits on December 20, 2002 (retroactive to November 12, 2002), but his request for waiver of life insurance premiums was denied (id. ¶16). Unum calculated that Webb would receive $14,124.95 monthly under the Plan and $6,500 monthly under the IDI Plan (id.). In January 2003 Gardner Carton informed both Webb and Unum that it believed Webb was being

overpaid (id. ¶19), with Gardner Carton's executive director Michael Marget ("Marget") sending a January 15 letter to Unum explaining that the Plan contained a drafting error, that Gardner Carton intended the maximum monthly benefit under the Plan to be $8,500 and that he wanted to amend the Plan accordingly effective on January 12 (id. ¶20). Marget also requested that Unum waive Webb's obligation to pay life insurance premiums (id.).

On January 16 Marget told Webb that in return for waiving any right to higher benefits under the allegedly faulty language of the Plan, Unum would not seek recovery of the two overpayments that Webb had already received (id. ¶21). Marget also threatened to withdraw Gardner Carton's support of Webb's application for a life insurance premium waiver and suggested that Webb's disability benefits would be revisited entirely if Webb challenged a reduction to his benefits (id.). Webb did not back down, but he nonetheless received reduced benefits starting in January 2003 ($8,500 under the Plan, for a monthly total of $15,000) (id. ¶22).

On April 1, 2003 Webb sent an email appealing the reduction (id. ¶23). That appeal was rejected, but Webb's obligation to pay his life insurance premium was in fact waived (id. ¶¶26, 28). Webb did not seek further review, assertedly because he feared retaliation based on Marget's threats (id. ¶28). On July 15, 2003 the Plan was amended -- retroactive to January 1, 2002, before Webb's disabling event--to reflect Gardner Carton's asserted original understanding of both plans (id. ¶27).

Webb's benefits from the Plan and the IDI Plan ran out on January 20, 2012, and he then filed suit against defendants (id. ¶28). In addition to his injury based on his lost benefits (id. ¶31), Webb also alleges an injury pursuant to Unum's and Gardner Carton's distribution of a

misleading Summary Plan Description ("SPD") (id. ¶36). ERISA requires plan administrators to distribute accurate SPDs (§1021(a)), and Webb maintains that even if this Court finds the retroactive amendment to the Plan to be valid, he will still have received a misleading SPD in which the maximum payment under the Plan was stated to be $15,000, a communication that caused him harm (id. ¶35-36). Webb seeks to recoup those injuries through three claims, one for benefits unpaid under Section 1132(a)(1)(B), another for recovery based on a breach of fiduciary duty under Section 1132(a)(3) and the third for recovery due to a retaliatory employment action under Section 1140.

### Count I: Section 1132(a)(1)(B)

Section 1132(a)(1)(B) permits an ERISA plan participant to sue for recovery of benefits due under the plan to which he belongs. Webb claims that the version of the Plan in place at the time his disability began awarded a maximum monthly payment of $15,000. Because he received only $8,500 per month for all but two months of his benefits period, he is seeking the balance of benefits allegedly owed. Defendants' motions to dismiss respond, and this Court agrees, that Webb's Section 1132(a)(1)(B) claim is untimely.[3]

ERISA does not contain a statute of limitations for suits brought pursuant to Section 1132(a)(1)(B), so the general practice is "to borrow the limitations period of the most analogous state or federal statute" (Abena v. Metro. Life Ins. Co., 544 F.3d 880, 883 (7th Cir. 2008)). But if a contractual limitations period is established by an ERISA plan, it must be enforced if

---

[3] While it is often premature to argue that a suit is untimely at the motion-to-dismiss stage, such an argument is proper in a Rule 12(b)(6) motion if a complaint and its exhibits provide enough information to show that the applicable limitations period has run its course (see Logan v. Wilkins, 644 F.3d 577, 582 (7th Cir. 2011)).

reasonable (Doe v. Blue Cross & Blue Shield United of Wis., 112 F.3d 869, 874 (7th Cir. 1997)).

Here defendants contend that Webb's Section 1132(a)(1)(B) claim is barred by the contractual limitations period established in the Plan, which states, "You can start legal action regarding your claim . . . up to 3 years from the time proof of claim is required . . ." (Ex. A). Under other provisions of the Plan, proof of claim is required 90 days after the elimination period (that is, the period of continuous disability that must be satisfied to receive benefits -- in this case, 180 days) (Ex. A). With Webb's disabling event having taken place on May 16, 2002, putting the end of his elimination period at November 12, 2002 and the due date for his proof of claim at February 9, 2003, defendants' position is that a Section 1132(a)(1)(B) claim filed after February 9, 2006 must be deemed untimely.

Webb responds with several arguments that would render his Section 1132(a)(1)(B) claim timely. Those will be discussed here seriatim.

First Webb maintains that the contractual limitations period on which defendants rely is not applicable to his Section 1132(a)(1)(B) claim. For support he cites Withrow v. Halsey, 655 F.3d 1032, 1039 (9th Cir. 2011) which held that a similarly worded limitations clause applied only to disputes as to the threshold question of entitlement to benefits, not to the amount of benefits owed.[4] According to Webb the contractual limitations periods in both this case and Withrow were "awkward" as applied to a suit alleging miscalculation of benefits, so that a more appropriate limitations period should be taken from an analogous state statute. In reply

---

[4] California actually mandated the placement of the limitations clause in Withrow, which stated, "No action at law or in equity shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished . . ." (California Ins. Code §10350.11).

defendants cite several cases holding that a broadly worded limitations clause in an ERISA plan does apply to an allegation of miscalculated benefits (see, e.g., Schaefer v. AXA Equitable Life Ins. Co., 345 Fed. Appx. 87, 93-94 (6th Cir. 2009)).

While our Court of Appeals has not ruled on this precise issue, the reasoning underpinning its decision in Abena, 544 F.3d at 884 signals that it would not follow the Withrow path. In Abena, id. an ERISA plan's contractual limitations clause -- which, as here, was calculated based on the time that proof of disability was due -- was deemed to apply not just to suits as to whether benefits are owed, but also suits as to the termination of benefits (id.). According to Abena the limitations clause there[5] was clearly broad enough to include both types of claims, and although there "the Plan language [is] not particularly well suited to claims which [are] initially granted and then later terminated" id., the Court of Appeals refused to rewrite the ERISA plan.

That same principle applies here: Whether or not the Plan's limitations period is "awkward" as applied, the Section 1132(a)(1)(B) aspect of this action is undoubtedly a "legal action regarding [Webb's] claim" (Ex. A).[6] Thus Webb's Section 1132(a)(1)(B) claim is subject to the three-year limitations period.

Next Webb argues that even if the contractual limitations period is applicable to his claim, the period is unreasonable and should be rejected. Webb is correct that a contractual limitations period must be reasonable -- both generally and as applied to a given case -- to be

---

[5] That clause stated, "No legal action of any kind may be filed against us . . . more than three years after proof of Disability must be filed. . . ." (544 F.3d at 881).

[6] "Claim" in the limitations clause refers, of course, to Webb's benefits claim under the Plan, not to any of his legal claims at issue in this case.

enforceable (see Doe, 112 F.3d at 874), but the period specified here is scarcely unreasonable. After all, Webb cannot claim to have discovered the alleged miscalculation of his benefits any later than April 2003, when he sent an e-mail protesting the change to his monthly award. With his three-year limitations clock having begun to tick in February 2003 -- two months after his proof of claim was due -- he had two years and ten months to file his Section 1132(a)(1)(B) claim. That is more than a reasonable amount of time to file suit under this circuit's ERISA case law (see Abena, 544 F.3d at 883; Doe, 112 F.3d at 873), so that the contractual limitations period must be applied.

Even so, Webb maintains, Marget's retaliation threat prevented him from bringing his claim in a timely manner, so that the applicable limitations period should be tolled. That contention fails whichever of two potential tolling doctrines Webb may be referring to -- equitable tolling or equitable estoppel (see Cada v. Baxter Healthcare Corp. 920 F.2d 446, 450-51 (7th Cir. 1990)). Because his counsel has not specified which of those doctrines he calls upon, this opinion will address both.

First, where a prospective plaintiff acting with due diligence is unable to obtain the information necessary to be aware of the existence of his claim, the equitable tolling concept permits an extension of that limitations period (see Hamilton v. Komatsue Dresser Indus. Inc., 964 F.2d 600, 605 (7th Cir. 1992)). Here Webb lacked no vital information as to his claim, so the equitable tolling doctrine is inapplicable.

Equitable estoppel -- the second tolling option -- prevents a defendant from employing a limitations argument when that defendant took "active steps to prevent the plaintiff from suing on time" (id.). As Beckel v. Wal-Mart Assocs., Inc., 301 F.3d 621, 622 (7th Cir. 2002) teaches,

however, an equitable estoppel defense to a limitations argument is appropriate only when a defendant "conceal[s] the existence of the plaintiff's claim or . . . promis[es] not to plead the statute of limitations,"[7] neither of which took place in this case. Even more to the point, Beckel, id. at 624 also teaches expressly that "a threat to retaliate is not a basis for equitable estoppel." In sum, Webb's request for a tolling of his limitations period -- however viewed -- must be denied.

Finally Webb argues that each of defendants' monthly failures to pay the appropriate amount of benefits was a fresh breach, so that at least any underpayments made within the three years before he filed this action form the basis of a timely suit.[8] To that end Webb calls upon Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan, 856 F.2d 1418, 1423 (9th Cir. 1988), a miscalculation-of-benefits case that summarily concluded that "[a] separate cause of action arises with the issuance of each check." Although some other decisions have also considered each deficient benefit payment in a miscalculation case to be an independent ERISA violation (see, e.g., Pierce v. Metro. Life Ins. Co., 307 F. Supp. 2d 325, 332 (D. N.H. 2004); Korchek v. Nichols-Homeshield, Inc., No. 95 C 25, 1997 WL 619869, at *3 (N.D. Ill. Sept. 30)), the Second Circuit has far more recently pointed out that many courts -- indeed, including the

---

[7] Beckel's conclusion is partially based on the fact that Title VII provides a claim based on retaliation itself (see 301 F.3d at 624). But that bit of reasoning was not necessary for Beckel to reach its result, given the court's explanation that using a threat of retaliation to toll a statute of limitations would "distort the doctrine of equitable estoppel" (id.).

[8] Webb misunderstands the nature of the contractual limitations period applicable to this claim. As discussed earlier, the limitations period is not calculated from the time of an alleged breach but from the time at which Webb was obligated to provide proof of his disability claim. Fresh violations of the Plan by any of the defendants would not restart his limitations clock, nor would they trigger a new clock. If each allegedly deficient check actually constituted a fresh violation, the limitations period established in the Plan would be unreasonable as applied to at least some of those breaches (Doe, 112 F.3d at 874) -- but as the ensuing discussion explains, each check issued to Webb was not a fresh breach.

Ninth Circuit (!) -- have explicitly rejected the application of a "continuing breach" theory to an ERISA case -- see Novella v. Westchester County, 661 F.3d 128, 145-46 (2d Cir. 2011), citing Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 522 (3d Cir. 2007), Edes v. Verizon Commc'ns, Inc., 417 F.3d 133, 139-40 (1st Cir. 2005), Pisciotta v. Teledyne Indus., 91 F.3d 1326, 1332 (9th Cir. 1996) and Phillips v. Alaska Hotel & Rest. Employees Pension Fund, 944 F.2d 509, 520-21 (9th Cir. 1991). As Novella, 661 F.3d at 146 reasoned, a continuing-violation theory should apply where repeated decision-making occurs but not merely where a single decision has lasting effects.

While our Court of Appeals has not considered this issue in the precise context of an ERISA miscalculation case, its continuing-violation caselaw is in line with the Novella logic. Only a few examples are needed to demonstrate that.

In Leister v. Dovetail, Inc., 546 F.3d 875, 877-78 (7th Cir. 2008), for instance, a plaintiff brought an ERISA case claiming in part that her employer continually failed to make obligatory payments to her 401(k) retirement account, a claim to which defendants raised a statute of limitations defense. Though Leister, id. at 880 eventually concluded that the suit was timely under the applicable ten-year statute of limitations, the Court also explained that if a three-year statute of limitations had applied the timeliness of plaintiff's suit would have turned on whether the plaintiff knew at the outset that her employer would never make its obligatory contributions or, conversely, whether each lack of contribution was the result of a fresh decision, thus constituting a fresh breach. In like manner Berger v. AXA Network LLC, 459 F.3d 804, 815 (7th Cir. 2006) held that an ERISA claim brought under Section 1140 -- the prohibition against adverse employment actions that are aimed at preventing the exercise of ERISA rights -- accrues

at the time a prohibited employment decision is made by an employer, not when the effects of that decision are felt.

Those cases make clear that, contrary to the nearly quarter-century-old holding in Meagher the continuing-violation theory applies in this Circuit only when fresh decisions constituting fresh violations are made.[9] That is not the case here -- the defendants made a single determination that Webb was being overpaid and accordingly reduced his benefits payments. Those reduced payments were merely the effects of a single prior decision. Because the continuing-violation theory is inapplicable, Webb's Section 1132(a)(1)(B) claim is untimely.

**Count II: Section 1132(a)(3)**

Webb's second claim seeks recovery pursuant to Section 1132(a)(3), which empowers:

> a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Webb claims that both Unum and Gardner Carton breached two distinct duties owed to him by virtue of their roles as fiduciaries: (1) they failed to insure that the proper amount of benefits were paid and (2) they failed to provide an accurate SPD explaining the contents of the Plan. Each of Unum and Gardner Carton makes several arguments urging dismissal, but this opinion

---

    [9] This conclusion also avoids a jurisprudence that would make an illogical distinction between cases involving the denial of benefits and cases involving the miscalculation of benefits. Whether benefits are improperly denied or simply miscalculated is unrelated to whether an ERISA plan or an ERISA administrator has engaged in an additional action that might constitute a violation of ERISA. In either case money is being withheld on a monthly basis. As Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1139 (7th Cir. 1992) has stated in no uncertain terms, "[Section] 1132(a)(1)(B) claims accrue when . . . benefits are denied," not when payments are not made (cf. Ferguson v. Wm. Wrigley Jr. Co., 17 Fed.Appx. 421, 423 (7th Cir. 2001)). It is only logical for that to hold true regardless of whether benefits are denied in part or in whole.

need consider only a few to rule on this claim.

To begin, Webb's Section 1132(a)(3) claim is not cognizable to the extent that it requests relief from Unum's and Gardner Carton's alleged breach of the "duty . . . to administer the benefits in accordance with the language of the plan" (Cmplt. ¶34). Suits that seek to recover unpaid benefits due under the terms of an ERISA plan can be brought only under Section 1132(a)(1)(B), not Section 1132(a)(3) (Varity Corp. v. Howe, 516 U.S. 489, 515 (1996); Mondry v. Am. Family Mut. Ins. Co., 557 F.3d 781, 804-05 (7th Cir. 2009)). Because a portion of Webb's Section 1132(a)(3) claim seeks "to recover benefits due to him under the terms of his plan" (29 U.S.C. §1132(a)(1)(B)), that portion does not constitute a proper Section 1132(a)(3) claim upon which relief could be granted.

Nonetheless, Webb's Section 1132(a)(3) claim could still be cognizable. Courts are split on whether plaintiffs can proceed on a Section 1132(a)(3) claim where Section 1132(a)(1)(B) recovery is appropriate (compare Korotynska v. Metro. Life Ins. Co., 474 F.3d 101, 106 (4th Cir. 2006) with Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 89 (2d Cir. 2001)). One position is that Section 1132(a)(3) claims may succeed even where Section 1132(a)(1)(B) claims are also appropriate, but only when the Section 1132(a)(3) claim aims to remedy an injury separate and distinct from the loss of owed benefits (see Biglands v. Raytheon Employee Savs. & Investment Plan, 801 F. Supp. 2d 781, 784 (N.D. Ind. 2011)). Webb's Complaint avers that a false SPD persuaded him to forgo the purchase of supplemental insurance -- an injury separate from the loss of benefits. That would allow for possible recovery if this Court were to follow the Biglands path.

Further, under Cigna Corp. v. Amara, 131 S.Ct. 1866, 1878-80 (2011) a misleading SPD

may give rise to equitable relief where the actual plan would not itself permit recovery of benefits. In his responses to defendants' motions Webb admits that the retroactive amendment eliminating the "drafting error" in the Plan may have been effective, negating any possible liability under Section 1132(a)(1)(B). Thus whether or not both a Section 1132(a)(1)(B) and a Section 1132(a)(3) claim could be successful in the same action, the inability to recover under Section 1132(a)(1)(B) could open the door for Webb to recover under Section 1132(a)(3) (see Black v. Long Term Disability Ins., 373 F. Supp. 2d 897, 902 (E.D. Wis. 2005)).

But none of those possibilities needs to be pursued further, for any Section 1132(a)(3) claim would also be untimely in any event. Unlike claims brought under Section 1132(a)(1)(B), ERISA provides a specific statute of limitations for breaches of fiduciary duties -- here is Section 1113 in pertinent part:

> No action may be commenced . . . after the earlier of –
> \* \* \*
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation . . . .

Importantly, the clock begins to run under Section 1113(2) when a putative plaintiff has knowledge of a fiduciary's breach, not when the effects of that breach are felt (Librizzi v. Children's Mem'l. Med. Ctr., 134 F.3d 1302, 1306-07 (7th Cir. 1998)).

Here Webb's own allegations show conclusively that his Section 1132(a)(3) claim is time-barred. By April 2, 2003 he had knowledge of both (1) the reduction in his benefits (something evident from an email he sent protesting the reduction) and (2) the contents of the allegedly violative SPD (which, for Webb to have relied on those contents, had to have been received and read before he became disabled). Under the "actual knowledge" prong of

Section 1113, Webb's limitations period as to his fiduciary duty claim expired on April 2, 2006 at the latest.

Again Webb argues that the continuing breach theory should apply, but that theory is even more inapt in the Section 1132(a)(3) setting than it was for Webb's Section 1132(a)(1)(B) claim. It might be arguable that an underpayment violation continued to occur as allegedly deficient payments were continually made, but on this claim Webb asserts only a single breach of defendants' alleged fiduciary duty: the distribution of an inaccurate SPD. There is no suggestion that inaccurate SPDs continued to be distributed as Webb's benefits were paid, and the fact that the effects of the single alleged breach were felt for several years is irrelevant to when the breach occurred and when Webb became aware of that breach (cf. Berger, 459 F.3d at 815). Webb's second claim must also be dismissed as untimely.[10]

### Count III: Section 1140

Webb's final claim is based on Section 1140, which permits an ERISA plan participant to sue if he is "discharge[d], fine[d], suspend[ed], expel[led], discipline[d], or discriminate[d] against" for exercising his ERISA rights. Webb claims that Unum and Gardner Carton violated Section 1140 by threatening, through Marget, to retaliate against a challenge to the decision to reduce his benefits. Defendants' motions to dismiss contend that any such claim is time-barred under the five-year statute of limitations applicable to the most analogous state law claim, a suit

---

[10] Even apart from the issue of untimeliness, it is hard to see how Webb could have claimed beyond mere speculation that an accurate SPD reflecting an $8,500 maximum monthly Plan payout -- and thus a total monthly payout of $15,000 -- would have led to his purchase of supplemental health insurance. Webb's monthly benefits before the addition of the IDI Plan were already capped at $15,000 and he never saw the need to purchase supplemental insurance, so it is highly questionable whether a change to the benefit structure -- but not the amount of benefits receivable -- would have created the desire to obtain more coverage.

charging retaliatory discharge (see Teumer v. Gen. Motors Corp., 34 F.3d 542, 549-50 (7th Cir. 1994)).

Indeed, Webb acknowledges that if the limitations period cannot be equitably tolled, his Section 1140 claim must also be dismissed as untimely. Because this opinion has earlier rejected Webb's equitable tolling argument Webb's Section 1140 claim is also dismissed.

**Conclusion**

Webb's Complaint and contemporaneous filings provide enough information to compel the conclusion that each of Webb's three counts is time-barred. Defendants' motions to dismiss are therefore granted in their entirely, and this action is dismissed with prejudice.

                                                                                         Milton I. Shadur
                                                                                         Senior United States District Judge

Date: October 22, 2012